## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., a Missouri non-profit entity, STEPHEN K. HOUSE and GARY B. PAGE, natural persons,<br><br>Plaintiffs,<br><br>v.<br><br>MARK DUNASKI, KEN URQUHART,  C. NORTON, S. BOERNER and JOHN DOES 1-4, Personally, Individually, and in their Official Capacities,<br><br>Defendants. | Civil File No. _09cv 1116_ (DWF/RLE)<br><br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED UNDER FRCP 38(b) |

## CIVIL RIGHTS – COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §§ 1983 AND 1988(b)

## INTRODUCTION

Now come the Plaintiffs, Stephen K. House and Gary B. Page, ("Plaintiff Drivers") and the Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), and for their Complaint,  they bring this action seeking declaratory and injunctive relief and damages against Defendants and allege as follows:

SCANNED

MAY 1 3 2009

U.S. DISTRICT COURT MPLS

1

## JURISDICTION AND VENUE

1.  The causes of action alleged herein arise under 42 U.S.C. § 1983 authorizing civil

    actions against persons acting under color of state law who deprive any U.S.

    citizen of rights, privileges or immunities secured by the Constitution and laws of

    the United States.

2.  Jurisdiction over this matter is granted to this court by 28 U.S.C. § 1331 (federal

    question jurisdiction) and 28 U.S.C. § 1343(3) to redress the deprivation, under

    color of any state law, statute, ordinance, regulation, custom or usage, of any right,

    privilege or immunity secured by the Constitution of the United States or any act

    of Congress. An award of attorneys' fees and costs is authorized by 42 U.S.C. §

    1988(b).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The conduct

    complained of and the acts, events or omissions giving rise to Plaintiffs' claims

    took place entirely within the State of Minnesota and this judicial district and each

    of the Defendants may be found within the State of Minnesota and this judicial

    district.

## THE PARTIES

4.  Plaintiff Owner-Operator Independent Drivers Association, Inc. ("OOIDA") is a

    business association of persons and entities who own and/or operate motor

    vehicles to haul freight. OOIDA's members include both owner-operators and

    company drivers. Owner operators are small business truckers who own and

2

operate a truck tractor (or a tractor trailer combination). They lease their tractor and driving services, and often their own trailer, to motor carriers, agreeing to move items in interstate commerce for the motor carrier in exchange for specified compensation. Company drivers move items in interstate commerce as employees of motor carriers who own the truck-tractor and related equipment as well.

5. OOIDA is a not-for-profit corporation incorporated in the State of Missouri, with its headquarters located at 1 N.W. OOIDA Drive, P.O. Box 1000, Grain Valley, Missouri 64029. OOIDA was founded in 1973 and has almost 160,000 members residing in all fifty (50) states, including as pertinent hereto, Minnesota, and in Canada. OOIDA is acting herein in a representative capacity seeking only declaratory and injunctive relief on behalf of its members, including Plaintiffs House and Page, who operate from time-to-time within the State of Minnesota. The interests it seeks to protect are germane to the purposes for which OOIDA exists.

6. Plaintiff Stephen K. House is a natural person who resides at 4431A Highway 231, Springdale, WA 99173-9601. Plaintiff House is an owner-operator who leases motor vehicle equipment and his services as a driver to an authorized motor carrier. Plaintiff House is a citizen of the United States and of the State of Washington. Plaintiff House hauls freight in interstate commerce including, from time-to-time, freight that moves to, from or through the State of Minnesota. Plaintiff House is a member of OOIDA.

7.  Plaintiff Gary B. Page is a natural person and an employee driver who resides at
    300 S. Haslow, #10 N, Spencer, WI 54479.  Plaintiff Page is a citizen of the
    United States and of the State of Wisconsin.  Plaintiff Page is a company driver
    who hauls freight in interstate commerce, including, from time to time, freight that
    moves to, from or through the State of Minnesota.  Plaintiff Page is a member of
    OOIDA.

8.  Defendant Mark Dunaski is Chief of the Minnesota State Patrol within the
    Minnesota Department of Public Safety and holds the rank of Colonel in the
    Minnesota State Patrol.  Pursuant to Minnesota law, Colonel Dunaski has overall
    supervisory responsibility and authority for inspections of commercial vehicles
    and drivers operating in the State of Minnesota.  Upon information and belief,
    Defendant Ken Urquhart reports to Defendant Dunaski.  At all times material to
    this Complaint, Defendant Dunaski has acted under color of state statute,
    ordinance, regulation, custom or usage within the meaning of 42 U.S.C. § 1983.
    Defendant Dunaski is sued in his official capacity for prospective declaratory and
    injunctive relief and in his personal and individual capacity for damages.

9.  Defendant Ken Urquhart is a Captain in the Minnesota State Patrol, Department of
    Public Safety.  Defendant Urquhart currently holds the title of Commander,
    Commercial Vehicle Section, Minnesota State Patrol.  At all times material to this
    Complaint, Defendant Urquhart has acted under color of state statute, ordinance,
    regulation, custom or usage within the meaning of 42 U.S.C. § 1983.  Defendant

4

Urquhart is sued in his official capacity for prospective declaratory and injunctive relief and in his personal and individual capacity for damages.

10. Defendant Norton is a uniformed officer or trooper in the Minnesota State Patrol. Defendant Norton issued an out of service order to Plaintiff House on May 10, 2008, at the Red River Weigh Station, Clay County, Minnesota. At all times material to this Complaint, Defendant Norton has acted under color of state statute, ordinance, regulation, custom or usage within the meaning of 42 U.S.C. § 1983. Defendant Norton is sued in his official capacity for prospective declaratory and injunctive relief and in his personal and individual capacity for damages.

11. Defendant S. Boerner is a uniformed officer in the Minnesota State Patrol. Defendant Boerner is the uniformed officer who issued an out of service order to Plaintiff Page on September 10, 2006, at the Red River Weigh Station, Clay County, Minnesota. At all times material to this Complaint, Defendant Boerner has acted under color of state statute, ordinance, regulation, custom or usage within the meaning of 42 U.S.C. § 1983. Defendant Boerner is sued in his official capacity for prospective declaratory and injunctive relief and in his personal and individual capacity for damages.

12. Defendants John Doe 1-3 are uniformed officers in the Minnesota State Patrol who participated in the May 10, 2009 inspection of, and the issuance of the out of service order to, Plaintiff House. At all times material to this Complaint, Defendants John Doe 1-3 acted under color of state statute, ordinance, regulation, custom or usage within the meaning of 42 U.S.C. § 1983. Defendants Doe 1-3 are

sued in their official capacities for prospective declaratory and injunctive relief
and in their personal and individual capacities for damages.

13. Defendant John Doe 4 is a uniformed officer in the Minnesota State Patrol who
participated in the September 10, 2006 inspection of, and the issuance of the out of
service order to, Plaintiff Page.  At all times material to this Complaint, Defendant
John Doe 4 acted under color of state statute, ordinance, regulation, custom or
usage within the meaning of 42 U.S.C. § 1983.  Defendant Doe 4 is sued in his
official capacity for prospective declaratory and injunctive relief and in their
personal and individual capacity for damages.

## NATURE OF THE ACTION

14. Plaintiff House is an owner-operator driver who hauls freight in interstate
commerce while under lease to a motor carrier holding operating authority issued
to them by the Federal Motor Carrier Safety Administration ("FMCSA").  Plaintiff
Page is a company driver who operates a truck as an employee of a regulated
motor carrier.  The condition of the truck and the condition of the driver himself
are subject to a variety of safety regulations promulgated by FMCSA and the
various states within which such drivers operate, including the State of Minnesota.
The State of Minnesota has adopted substantial portions of federal motor carrier
safety regulations as a condition for receiving federal government funds.  M.S.A. §
221.605.  Thus, state safety enforcement action referred to herein involves the
enforcement of state law and regulations based upon counterpart regulations at the
federal level.

6

15. Failure to comply with various safety regulations may subject drivers to citations issued by federal or state enforcement officers. Under defined circumstances – generally when a vehicle or driver is so out of compliance with regulatory requirements so as to create an imminent hazard to safety (driver violations) or the likelihood of a breakdown or accident (vehicle violations) – Minnesota State enforcement officers may issue an out of service ("OOS") order forbidding the vehicle and/or driver from operating. A vehicle may be placed OOS until repairs are made that restore it to compliance with applicable regulations. A driver may be placed OOS for a prescribed length of time or until the circumstances giving rise to the OOS order are abated. An inspection of a driver to determine his eligibility and physical capacity to drive is a search within the meaning of the Fourth Amendment to the U.S. Constitution. An OOS order constitutes a seizure within the meaning of the Fourth Amendment to the U.S. Constitution.

16. Defendants Norton, Boerner and John Does 1-4, under internal procedures and guidelines established by Defendant Urquhart for use by members of the Minnesota State Patrol, issued OOS orders placing Plaintiff Drivers out of service for 10 hours on the sole ground that they were purportedly too "fatigued" to drive.

17. These OOS orders were not authorized by law, were made pursuant to a regulation that is unconstitutionally vague both on its face and as applied, were not supported by technically sound and valid criteria for identifying and measuring fatigue, were

7

issued without the benefit of either a pre-deprivation or post-deprivation hearing, and resulted in the loss and deprivation of Plaintiffs House and Page's right to liberty and property without due process of law in violation of the Fourteenth Amendment of the U.S. Constitution.  These OOS orders violated Plaintiffs House and Page's right to be free from unreasonable searches and seizures within the meaning of the Fourth Amendment to the U.S. Constitution.

## FACTUAL ALLEGATIONS

### Regulation of Driver Fatigue

18. In 1996, the Federal Highway Administration ("FHWA") published an advanced notice of proposed rulemaking ("ANPRM") in anticipation of a major regulatory revision to the hours of service ("HOS") regulations governing federally regulated motor carriers.  61 Fed.Reg. 57252 (Nov. 5, 1996).  FHWA's ANPRM envisioned the possibility of replacing the kind of prescriptive requirements embodied in its HOS regulations with performance-based regulations addressing the question of fatigue directly.  *Id.* at 57256.  FHWA asked for public comments as to whether scientific knowledge had progressed to the point where performance-based regulations were technically feasible and operationally practical.  *Id.* at 57258.

19. In May of 2000, the newly reorganized FMCSA published a notice of proposed rulemaking ("NPRM") to revise the HOS regulations.  65 Fed.Reg. 25540 (May 2, 2000).  FMCSA's NPRM abandoned the goal of performance-based regulation of fatigue finding that "more study is needed before such alternatives should be incorporated in this regulation of commercial highway operations."  65 Fed.Reg.

at 25552. The inherent difficulty in trying to adopt performance-based regulations rests upon a lack of understanding of fatigue and how to objectively identify and measure it.

20. The HOS regulations formally adopted by FMCSA do not regulate fatigue directly. FMCSA continues to address the problem of fatigued drivers indirectly by restricting drivers' HOS thereby providing the opportunity for drivers to obtain restorative sleep. The enforcement scheme for this prescriptive regulatory approach focuses entirely on imposing consequences, including OOS orders, on drivers who fail to limit their driving activities in accordance with the restrictions imposed by the HOS regulations. 49 C.F.R. § 395.13.

21. 49 C.F.R. § 392.3 provides in part:

> No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

22. FMCSA regulations do not authorize the issuance of an out of service order for a so-called performance-based violation of 49 C.F.R. § 392.3 covering ill or fatigued drivers.

23. The State of Minnesota has statutorily adopted FMCSA's motor carrier regulations for interstate motor carriers by reference. M.S.A. § 221.605, Subd.1.

9

24. The State of Minnesota has not authorized by statute or regulation the issuance of
out of service orders to drivers based upon a failure to satisfy performance-based
criteria for fatigue.

### The Commercial Vehicle Safety Alliance

25. The Commercial Vehicle Safety Alliance ("CVSA") is a non-governmental
association.  Its membership is comprised of Federal, State and Provincial officials
responsible for the administration and enforcement of motor carrier safety laws
and regulations of the United States, Canada and Mexico.

26. CVSA establishes a list of violations of the safety regulations that are considered
to create conditions that are so unsafe that they should be corrected before
operations can resume safely.  This list of violations is known as the CVSA Out of
Service Criteria ("CVSA OOSC").

27. CVSA's OOSC does not define fatigue, nor does it establish any method of
measuring fatigue.  CVSA's OOSC does not establish criteria for ascertaining the
level of fatigue beyond which it is unsafe for an individual to drive.

28. Enforcement officers in the various states and provinces that participate in CVSA
derive their sole authority to issue out of service orders from laws or regulations
enacted by their state or provincial governments.

### Defendants' Unauthorized Program To Address Driver Fatigue

29. In or about the year 2005, Defendant Urquhart developed a training course on
driver fatigue for use by members of the Minnesota State Patrol.  The course
emphasized the role of uniformed officers of the Minnesota State Patrol in

conducting driver interviews as a basis for making performance-based determinations of driver fatigue.

30. Defendant Urquhart created a checklist for officers to use while conducting their interviews of commercial motor vehicle drivers.  Officers are strongly urged to use this checklist for documentation purposes whenever a determination of fatigue is made.  A copy of this checklist, now known as the "Fatigued Driving Evaluation Checklist," is attached hereto as Appendix 1.

31. Among the items the Fatigued Driving Evaluation Checklist requires a Minnesota State Patrol officer to consider in his evaluation of driver fatigue are the following:

Driver Physical Condition
Neck Size
Dirty/Disheveled
Unshaven
Noticeable Body Odor
Reading material, books
Magazines, papers

Appears irritable
Overly agreeable
Financial worries

Overall Truck Condition
Cleanliness
Smell
Presence of TV/DVD/Video Game System
in sleeper berth
Internet/e-mail access
Cell phone

Condition of Cab
Debris in cab
Wastebasket/ashtrays
Overflowing
Urine bottle present

11

> Driver Medical Condition
>> Sleep Apnea
>> CPAP Machine
>> Restless Leg Syndrome
>> Acid Reflux Condition
>> Dental Problems
>> Active Dreams
>> Wake up during night – bathroom
>> Sleepwalking

32. The Fatigued Driving Evaluation Checklist created by Defendant Urquhart for use by members of the Minnesota State Patrol does not define fatigue nor does it incorporate any medically or clinically tested and approved methods for measuring fatigue.

33. The Fatigued Driving Evaluation Checklist does not establish criteria or the number of factors for ascertaining a threshold of fatigue beyond which it is unsafe for an individual to operate safely.

34. Captain Urquhart has issued an internal memo to Minnesota State Patrol officers directing them to place any driver out of service if found too fatigued to operate safely. Neither Captain Urquhart, nor any of his superiors, nor anyone operating under his direction or control, have published criteria to be used, nor have they defined the factors required, to determine whether a driver is too fatigued to operate safely.

35. Defendant Dunaski has operational and supervisory responsibility for policies and procedures implemented by the Minnesota State Patrol including the policy and procedures Defendant Urquhart imposes upon uniformed officers of the Minnesota

State Patrol to (1) conduct performance-based evaluations of driver fatigue using the Fatigued Driving Evaluation Checklist, and (2) to issue OOS orders to drivers on the basis of such evaluations.

**Allegations Respecting Plaintiff House**

36. Plaintiff House maintains his drivers log book on Pacific Coast Time. Unless otherwise noted, all time references are in Pacific Coast Time.

37. Plaintiff House was off duty or in the sleeper berth of his truck from 4:45 p.m. May 8, 2008 to 5:30 a.m. on May 10, 2008. On Saturday, May 10, 2008 Plaintiff House went on duty at approximately 5:30 a.m. in Bozeman, Montana and drove until he arrived in Beach, North Dakota at 12:00 noon. He rested in the sleeper berth for three hours and then drove from approximately 3:15 p.m. to 6:15 p.m. when he arrived at the Red River Weigh Station ("RRWS") in Clay County Minnesota at 6:15 p.m. (8:15 p.m. local time).

38. Plaintiff House was accompanied by his wife Jeannette L. House who holds a Commercial Drivers License ("CDL") and operates when needed as a co-driver.

39. When Plaintiff House arrived at the RRWS, he observed what appeared to be extensive and well-organized law enforcement activity going on. Many trucks were in the parking area with Minnesota State Patrol troopers parked in front of them with emergency lights flashing. Additional cars and police officers were in the scale area. Plaintiff House was motioned by an officer to go to the right and he did so, stopping at a stop sign. Plaintiff House waited at the stop sign and, after receiving no further instructions, he moved out to go about his business. Plaintiff

House presented no indicia supporting reasonable suspicion that he was in violation of any safety regulation.

40. At this point a uniformed officer instructed him to go no further. Plaintiff House then backed up to the scale and was weighed.

41. After being weighed, Plaintiff House gave an officer his log book, valid registration and CDL. He was then informed that he should go into a building and answer some questions. Plaintiff House parked his truck and went to the building as instructed.

42. Upon reaching the building with his wife, Plaintiff House was informed that his wife was not needed. He was told that this was no big deal, that the officers just wanted to ask him a few questions.

43. Upon information and belief, the encounter that followed was with Trooper C. Norton of the Minnesota State Patrol. Other uniformed officers of the Minnesota State Patrol were present, including John Does 1 – 3.

44. Defendant Norton of the Minnesota State Patrol conducted the interview and followed procedures and policies established by Defendant Urquhart under the overall supervision and control of Defendant Dunaski. The first question asked was what Plaintiff House's neck size was. Plaintiff House responded that he did not know. Follow-up questions on neck size were asked and answered leaving Plaintiff House with the impression that the officer did not believe that House did not know his own neck size.

45. Defendant Norton then asked Plaintiff House how often he went to the bathroom
    at night, and how many times he opened his eyes at night when his wife was
    driving. He was also asked whether he had a television and books in the sleeper
    berth. Plaintiff House responded affirmatively to presence of a television and
    books as well as to the questions regarding his bladder activity and his
    wakefulness while off duty in the sleeper berth.

46. Plaintiff House informed Defendant Norton that he was often accompanied on the
    road by his wife, as co-driver, and his young son who has Downs Syndrome.
    Defendant Norton asked whether Plaintiff House could sleep in the sleeper berth
    with two other people. Plaintiff House's truck is a Kenworth W 900 L with two
    beds in an 86 inch sleeper berth. Plaintiff House informed Defendant Norton that
    there was plenty of room, that he could sleep comfortably and that he had done so
    for many years. Defendant Norton then entered into a dialogue with Plaintiff
    House during which he insisted that Plaintiff House could not sleep in the sleeper
    berth with two other people present.

47. Plaintiff House was then asked why his eyes were purportedly "red." Plaintiff
    House replied that he had allergies, and that he had gone off duty for at least ten
    hours on the previous night.

48. Defendant Norton then informed Plaintiff House that he had "reached a
    determination that you [House] are too tired to drive." The officer then placed
    Plaintiff House out of service for ten hours. A copy of the OOS order is attached
    as Appendix 2.

49. Defendant Norton's action in placing Plaintiff House out of service was neither random nor unauthorized but was taken pursuant to established state policy, practice and custom approved by Colonel Dunaski and Captain Urquhart and implemented on a regular and well-organized basis by members of the Minnesota State Patrol.

50. Plaintiff House had no prior notice of the Fatigued Driving Evaluation Checklist or any of its purported criteria or evaluative factors.

51. Plaintiff House was never afforded any pre-deprivation hearing, process or review through which he could have challenged the OOS order.

52. Plaintiff House was never informed of any post-deprivation hearing, process or review through which he could have challenged the OOS order.

53. There are no pre-deprivation or post-deprivation hearing or review procedures through which Plaintiff House or other drivers similarly situated could obtain the required due process of law for performance-based OOS orders for fatigue.

54. At all times material to this Complaint Plaintiff House's record of duty (log book) was current and accurate as required by Minnesota and federal law.

55. At all times material to this Complaint, Plaintiff House was operating within the allotted time for driver on-duty status established by the State of Minnesota HOS regulations.

56. Defendants did not issue Plaintiff House a citation for violating Minnesota's HOS regulations nor did Defendants issue an out of service order for violating the log book regulation.

## Allegations Respecting Plaintiff Page

57. On September 10, 2006, Plaintiff Page arrived at the RRWS at approximately 1:00 a.m. At that time, Plaintiff Page observed what appeared to him to be law enforcement activity going on with about 100 Minnesota State Patrol troopers present.

58. Upon information and belief, the encounter that followed was with Trooper S. Boerner of the Minnesota State Patrol. Defendant Boerner told Plaintiff Page that he looked pretty tired and asked whether he would take a survey. Plaintiff Page agreed to take that survey.

59. Defendant Boerner conducted the so-called survey following procedures and policies established by Defendants Dunaski and Urquhart. Defendant Boerner asked the following questions, among others:

> Do you have a TV/DVD in your cab?
>
> Do you have a computer in the cab?
>
> When was the last time you drank soda?
>
> Do you drink coffee or other caffeinated beverages?
>
> Are you married or divorced?
>
> How many children do you have?
>
> Do you have custody of your children?

Plaintiff Page responded to each of these questions as well as to other questions.

17

60. Defendant Boerner then excused himself, saying that he had to confer with his supervisor. On information and belief, Defendant Boerner then met and conferred with John Doe 4. When he returned, Defendant Boerner informed Plaintiff Page that he was too tired to drive and presented him with an OOS order. That order is attached hereto as Appendix 3.

61. Defendant Boerner's action in placing Plaintiff Page out of service was neither random nor unauthorized but was taken pursuant to established state policy, practice and custom approved by Colonel Dunaski and Captain Urquhart and implemented on a regular and well-organized basis by members of the Minnesota State Patrol.

62. Plaintiff Page had no prior notice of the Fatigued Driving Evaluation Checklist or any of its purported criteria or evaluative factors.

63. Plaintiff Page was never afforded any pre-deprivation hearing, process or review through which he could have challenged the OOS order.

64. Plaintiff Page was never informed of any post-deprivation hearing, process or review through which he could have challenged the OOS order.

65. There are no pre-deprivation or post-deprivation hearing, process or review procedures through which Plaintiff Page or other drivers similarly situated could obtain the required due process of law for performance-based OOS orders for fatigue.

66. At all times material to this Complaint Plaintiff Page's record of duty (log book) was current and accurate as required by Minnesota and federal law.

18

67. At all times material to this Complaint, Plaintiff Page was operating within the allotted time for driver on-duty status established by the State of Minnesota HOS regulations.

68. Defendants did not issue Plaintiff Page a citation for violating Minnesota's HOS regulations nor did Defendants issue an out of service order for violating the log book regulations.

## CAUSES OF ACTION

## COUNT I

### Violation of Due Process of Law

69. Paragraphs 1 – 68 above are incorporated herein by reference.

70. Minnesota statutes and regulations do not authorize the issuance of out of service orders by members of the Minnesota State Patrol based upon any performance-based criteria for driver fatigue.

71. The issuance of out of service orders to Plaintiffs House and Page based solely on a performance-based assessment of fatigue is not authorized by law and deprived said Plaintiffs of their liberty and property without due process of law within the meaning of the Fourteenth Amendment to the U.S. Constitution.

72. Plaintiffs House and Page have each suffered damages in excess of $75,000.00 and will suffer irreparable harm in the future based on Defendants' actions.

## COUNT II

### Violation of Due Process of Law – Pre-deprivation Hearing

73. Paragraphs 1-72 are incorporated herein by reference.

74. The issuance of the OOS orders to Plaintiffs House and Page were not random or unauthorized but was undertaken pursuant to established state policy, practice and custom promulgated by Captain Urquhart with the approval of Colonel Dunaski and promoted through directives issued through the chain of command of the Minnesota State Patrol.

75. The issuance of the OOS orders without a pre-deprivation hearing or review violated Plaintiffs House and Page's rights to liberty and property without due process of law within the meaning of the Fourteenth Amendment to the U.S. Constitution.

76. Plaintiffs House and Page have each suffered damages in excess of $75,000.00 and will suffer irreparable harm in the future based on Defendants' actions.

## COUNT III

### Violation of Due Process of Law – Denial of Post-deprivation Hearing

77. Paragraphs 1 – 76 are incorporated herein by reference.

78. The issuance of the OOS orders without notice of, or the opportunity to have, a post-deprivation hearing or review violated Plaintiff House and Page's rights to liberty and property without due process of law within the meaning of the Fourteenth Amendment to the U.S. Constitution.

79. Plaintiffs House and Page have each suffered damages in excess of $75,000.00 and will suffer irreparable harm in the future based on Defendants' actions.

## COUNT IV

### Warrantless Search and Seizure

80. Paragraphs 1 – 79 are incorporated herein by reference.

81. The inspections (interviews) of Plaintiffs House and Page constituted searches within the meaning of the Fourth Amendment.  The subsequent orders placing Plaintiffs House and Page out of service constituted seizures within the meaning of the Fourth Amendment.

82. The warrantless inspection and/or seizure of vehicles or drivers in a pervasively regulated industry like trucking may only be undertaken properly only where the inspecting jurisdiction has established by statute or regulation a constitutionally adequate substitute for a warrant.  Such statute or regulation must include provisions limiting the discretion of inspecting officers in the field, establishing prior limits on the intrusion involved, ensuring regularity of the inspection process, and safeguarding the privacy interests and expectations of the drivers subject to inspection.

83. At no time were Plaintiffs House or Page informed that Defendants Norton, Boerner and John Does 1-4 were under instructions from their superiors to question them for the purpose of ascertaining their level of fatigue, or the potential for being placed OOS for such purported fatigue.

84. At no time were Plaintiffs House or Page advised of the statutory or regulatory basis of the Defendants' authority to inquire into the various subjects.

21

85. At no time were Plaintiffs House or Page advised of any prior limitations on the authority of Defendants Norton, Boerner and John Does 1 – 4 to conduct interviews into intrusive personal and private subjects.

86. At no time were Plaintiffs House or Page advised of any privacy rights that they may have or invoke that would circumscribe Defendants' ability to inquire into personal and private matters including the various subjects set forth in the Fatigued Driving Evaluation Checklist used by the Minnesota State Patrol and the named Defendants.

87. Defendants' conduct in the execution of a warrantless search and seizure of Plaintiffs House and Page was *per se* unreasonable and was not guided or restrained by any prior statutory or regulatory provisions that served as a constitutionally adequate substitute for a warrant thereby violating Plaintiffs House and Page's rights to be protected from unreasonable searches and seizures within the meaning of the Fourth Amendment to the U.S. Constitution.

88. Plaintiffs House and Page have each suffered damages in excess of $75,000.00 and will suffer irreparable harm in the future based on Defendants' actions.

## COUNT V

### Enforcement of Unconstitutionally Vague Regulation

89. Paragraphs 1 – 88 are incorporated herein by reference.

90. The terms "fatigue" and "illness" as used in 49 C.F.R. § 392.3 are not defined anywhere under Title 49 of the U.S. Code; nor are they defined under applicable Minnesota law nor in the CVSA OOS criteria.

22

91. 49 C.F.R. § 392.3 fails to give a person of ordinary intelligence reasonable notice as to what conduct is prohibited and fails to provide sufficient standards for enforcement.

92. 49 C.F.R. § 392.3 is so indefinite and uncertain as to legitimize its impermissibly arbitrary and subjective application in enforcement actions.

93. 49 C.F.R. § 392.3 is void as unconstitutionally vague on its face.

94. 49 C.F.R. § 329.3 is unconstitutionally vague as applied by Defendants in issuing the OOS orders to Plaintiffs House and Page on the basis of subjects covered by the Fatigued Driving Evaluation Checklist.

95. As a result of the purported enforcement of 49 C.F.R. § 392.3 against Plaintiffs House and Page by Defendants acting under color of state law, Plaintiffs have been deprived of their rights to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

96. Plaintiffs House and Page have each suffered damages in excess of $75,000.00 and will suffer irreparable harm in the future based on Defendants' actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this court:

A.      Enter judgment in favor of Plaintiffs and against Defendants;

B.      Enter an order declaring that Minnesota law does not authorize officers of the Minnesota State Patrol to issue out of service orders for violation of 49 C.F.R. § 392.3;

C.      Enter an order declaring that Plaintiffs House and Page were
        deprived of their rights to liberty and property by reason of the
        Defendants' failure to provide them with a pre-deprivation hearing
        before issuing the out of service orders; or, alternatively, enter an
        order declaring that Plaintiffs House and Page were deprived of their
        rights to liberty and property by reason of Defendants' failure to
        provide them with a post-deprivation hearing following issuance of
        their out of service orders;

D.      Enter an order declaring that Plaintiffs House and Page were
        subjected to unreasonable search and seizure by reason of
        Defendants' issuance of their out of service orders without statutory
        or regulatory provisions serving as a constitutionally adequate
        substitute for a warrant;

E.      Enter an order declaring that 49 C.F.R. § 392.3 as incorporated into
        state law by Minnesota and/or as included in CVSA's OOS criteria
        is unconstitutionally vague on its face.

F.      Enter an order declaring that 49 C.F.R. § 392.3 as incorporated into
        state law by Minnesota and/or as included in CVSA's OOS criteria
        is unconstitutionally vague as implemented and applied by
        Defendants using the Fatigued Driving Evaluation Checklist;

24

G.  Enter an order prospectively enjoining and restraining Defendants Dunaski, Urquhart, Norton and Does 1-4 in their official capacities from issuing out of service orders for violation of 49 C.F.R. § 392.3;

H.  Award Plaintiff House compensatory damages against Defendants Dunaski, Urquhart, Norton and Does 1-3 individually and in their personal capacities;

I.  Award Plaintiff Page compensatory damages against Defendants Dunaski, Urquhart, Boerner and John Doe 4 individually and in their personal capacities;

J.  Award Plaintiffs' counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law;

K.  Grant to Plaintiffs such other and further relief as may be just and proper under the circumstances, including all available statutory damages and relief under 42 U.S.C. § 1983 and 1988.

## PUNITIVE DAMAGES

Plaintiffs House and Page intend to seek punitive damages at trial against Defendants Dunaski, Urquhart, Norton, and John Does 1-4 in their individual and personal capacities, including punitive damages available under 42 U.S.C. § 1983 and 1988, and any available punitive damages under applicable Minnesota law, following any required and appropriate motion, hearing and order by the Court.

# DEMAND FOR JURY TRIAL

Plaintiffs House and Page demand a jury trial  pursuant to the Seventh

Amendment to the Constitution of the United States as to all claims so triable, including

claims for damages.

Date: 5/13/2009

Respectfully submitted,

Albert Turner Goins, Sr.
Atty. No. 0126159
GOINS LAW OFFICES
301-4th Avenue South Suite 378N
Minneapolis, MN 55415
612.339.3848 tel.
612.339.3853 facsimile


Of Counsel:   Paul D. Cullen, Sr. (D.C. Bar # 100230)
              Daniel E. Cohen (D.C. Bar # 414985)
              Joyce E. Mayers (D.C. Bar  # 268227)
              Paul D. Cullen, Jr. (D.C. Bar # 463759)
              THE CULLEN LAW FIRM, PLLC
              1101 30th Street, N.W.
              Suite 300
              Washington, D.C. 20008
              202.944.8600 tel.
              202.944.8611 facsimile