UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Owner-Operator Independent Driver Association, Inc., a Missouri non-profit entity; and Stephen K. House, a natural person, | Civil No. 09-1116 (DWF/LIB) |
| Plaintiffs, | |
| v. | **ORDER FOR DECLARATORY RELIEF, INJUNCTION, AND ENTRY OF JUDGMENT** |
| Mark Dunaski, Ken Urquhart, James Ullmer, Doug Thooft, Christopher Norton, and John Doe, all personally, individually, and in their official capacities, | |
| Defendants. | |

Albert T. Goins, Sr., Esq., Goins Law Offices, Ltd., and Daniel E. Cohen, Esq., Joyce E. Mayers, Esq., Paul D. Cullen, Jr., Esq., and Paul D. Cullen, Sr., Esq., The Cullen Law Firm, counsel for Plaintiffs.

Marsha Eldot Devine, and Thomas C. Vasaly, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendants.

This matter came before the Court for a trial without a jury on September 13, 14, 15, 16, 20, and 21, 2010. Based upon the presentations of the parties, including the testimony and exhibits that were submitted during the trial, the post-trial submissions, and the entire record before the Court, the Court filed Findings of Fact, Conclusions of Law, Order and Memorandum on January 28, 2011 ("January 28, 2011 Order"). The Court filed Amended Findings of Fact, Conclusions of Law, Order and Memorandum on April 27, 2011 ("April 27, 2011 Order").

In this lawsuit, Plaintiffs Owner-Operator Independent Drivers Association, Inc. ("OOIDA") and Stephen K. House, a commercial vehicle driver, challenged a fatigue enforcement program initiated by Defendants, who are officers and officials of the Minnesota State Patrol ("MSP"). Plaintiffs alleged six counts against Defendants under 42 U.S.C. § 1983 for violations of the United States Constitution under the Fourteenth Amendment and the Fourth Amendment. Subsequent to the Court filing its April 27, 2011 Order, the parties met with Magistrate Judge Leo I. Brisbois to discuss the remaining issues of prospective injunctive and declaratory relief. While the parties agreed that an order should be entered addressing declaratory relief, an injunction, and entry of judgment, they were unable to agree on the provisions of such an order.

Based on the evidence received at trial, the presentations and submissions of all parties, along with all papers on file and proceedings herein, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1.   The Court's January 28, 2011 Findings of Fact, Conclusions of Law, Order and Memorandum filed on January 28, 2011 ("January 28, 2011 Order") (Doc. No. [196]) is hereby incorporated herein and is attached as Exhibit A.

2.   The Court's Amended Findings of Fact, Conclusions of Law, Order and Memorandum filed on April 27, 2011 ("April 27, 2011 Order") (Doc. No. [216]) is incorporated herein and is attached hereto as Exhibit B.

3. With respect to Count IV of the Second Amended Complaint, entitled Warrantless Search and Seizure, the Court hereby **CONCLUDES AND DECLARES** as follows:

 a. On May 19, 2008, when Defendants James Ullmer and Christopher Norton conducted an inspection of Plaintiff Stephen K. House as described in the Court's January 28, 2011 Order, said Defendants did not have a reasonable articulable suspicion that House was too impaired due to fatigue to safely operate his motor vehicle. The continued duration of the detention, as well as the broad scope of questions by Defendants Ullmer and Norton, constituted a seizure in violation of House's Fourth Amendment right against an unreasonable seizure.

 b. The MSP's commercial vehicle enforcement program in place on May 10, 2008, with respect to commercial vehicle drivers who were too impaired due to fatigue to safely operate their vehicles did not properly and adequately limit the inspecting officers' discretion.

 c. The MSP's current procedures and protocols encompassed in General Orders 10-25-002 (Determination of Commercial Vehicle Impairment Due to Illness and/or Fatigue Related Enforcement), 10-70-020 (Uniform Driver/Vehicle Out of Service); and 10-25-010 (Commercial Vehicle Driver and Equipment Inspections, North American Standard Inspection), copies of which are attached hereto as Exhibits C, D, and E,

respectively, are constitutionally adequate so long as they are followed by properly trained personnel, provided that, consistent with paragraph 57 of the April 27, 2011 Order, as noted above, the training continues to address the limitations and restrictions of CVIs and troopers who conduct NAST inspections when impairment due to illness, fatigue, or other causes is at issue.

First, during a NAST inspection, Troopers and CVIs are to observe drivers for signs of impairment due to illness, fatigue, or other causes, but they cannot expand the driver portion of the inspection to determine impairment unless they have a reasonable articulable suspicion that the driver may be impaired.  Second, the questions used to determine impairment must be reasonably related to whether the driver can safely operate the vehicle at the time.  Untruthful or misleading statements to the driver are no longer permitted.  Drivers are to be told the purpose of the questions if they inquire, and they are not required to answer questions.  Third, a driver will not be ordered out of service for fatigue or illness unless there is probable cause to believe that the driver, due to fatigue or illness, is unsafe to drive because there is an imminent risk to public safety.  When the driver is placed out of service, he is also to be given a citation.  Fourth, the Fatigue Inspection Checklist is no longer to be used to record observations during a driver inspection.  Instead, documentation must be

specific enough to show that the requirements in the General Orders have been met.

Notably, none of these procedures, limitations, or restrictions were in place on May 10, 2008.

4. With respect to Count IV of the Second Amended Complaint, entitled Warrantless Search and Seizure, the Court hereby **ENJOINS** Defendants as follows:

a. Defendants shall not violate the Fourth Amendment rights of Plaintiff Stephen K. House and the members of Plaintiff Owner-Operator Independent Drivers Association, Inc., in the manner described in the Court's January 28, 2011 Order.

b. Defendants shall not rescind or modify so as to reduce the procedures established by General Order 10-25-002, a copy of which is attached hereto as Exhibit C, and shall ensure that the MSP's commercial vehicle inspectors and troopers follow the practices and procedures in said General Order when conducting inspections of commercial vehicle drivers to determine whether they are too impaired due to fatigue to safely operate their commercial vehicles, unless the Court, for good cause shown by Defendants, modifies those requirements established by General Order 10-25-002.

c. Defendants shall ensure that commercial vehicle inspectors and troopers who conduct fatigue inspections are properly and adequately

trained to follow the practices and procedures in General Order 10-25-002 when conducting inspections of commercial vehicle drivers to determine whether they are too impaired due to fatigue to safely operate their commercial motor vehicles.  The MSP's October 2010 training program contained constitutionally adequate training materials.  (*See* the Court's Memorandum below.)

      d.      Defendants shall rescind the determination that Plaintiff Stephen K. House was impaired due to fatigue on May 10, 2008, shall rescind the related out-of-service order issued to him on that date, shall correct the entries in the FMCSA's SafetyNet and DataQs systems accordingly, and shall notify House of its actions.

      e.      The MSP shall rescind all determinations in inspection reports during the period April 1, 2008 to September 30, 2010 that drivers were impaired due to fatigue within the meaning of 49 C.F.R. § 392.2, shall rescind all related out-of-service orders, shall correct the entries in the FMCSA's SafetyNet and DataQs systems accordingly, and shall notify the drivers of its actions, provided, however, that (1) if an out-of-service order is based on a ground in addition to fatigue, the MSP shall rescind only the termination that the driver was fatigued and not the out-of service order and (2) if the driver was criminally convicted for driving while impaired due to

fatigue or was involved in a motor vehicle crash, the MSP shall not rescind any out-of-service order arising from the same matter.

  f.  The Court shall retain continuing jurisdiction of this matter for a period of two years from the date of this Order.

 5. All of Plaintiffs' claims against Defendant Ken Urquhart in his personal, individual, and official capacities, consistent with the Court's April 27, 2011 Order are **DISMISSED WITH PREJUDICE,** as he did not have personal involvement in the matters in Plaintiffs' second amended complaint. (*See* discussion in the Court's September 7, 2010 Memorandum Opinion and Order (Doc. No. [165]) at 19-21.)

 6. All of Plaintiffs' claims against the Defendant referred to in Plaintiffs' second amended complaint as John Doe shall be **DISMISSED WITH PREJUDICE** because Plaintiffs did not identify this person.

 7. The MSP shall publish this Order, including Exhibits A-E, with General Order 10-25-002 attached: (1) in a conspicuous location and with a conspicuous link on the MSP's website; (2) at all permanent office locations where officers and personnel assigned to the Commercial Vehicle Section of the MSP (District 4700) conduct business on a regular basis; (3) by e-mailing a copy to each employee and new employee who is assigned duties within the Commercial Vehicle Enforcement Section (District 4700) of the MSP; and (4) in conspicuous locations accessible to drivers at each permanent place within the State of Minnesota where North American Standard Level 1, 2, or 3 inspections are conducted.

8. The Plaintiffs are directed to file a bill of costs and a motion for attorney fees, if any, within ninety (90) days of the entry of this Order. In the event that any party pursues an appeal, all briefing on the subject of costs and attorney fees will be deferred pending resolution of the appeal. The parties may file any motions relating to such costs and attorney fees within thirty (30) days after the resolution of all appellate proceedings.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 21, 2011            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge

**MEMORANDUM**

The challenge to the MSP, consistent with the decision of this Court, is to see to it that its General Orders that substantially changed the protocol for the determination of commercial vehicle impairment due to illness and/or fatigue are followed and the steps enforced in the General Order of May 10, 2010, as updated on August 24, 2010, as noted in the findings of fact, above, at paragraph 3 and in paragraph 57 of the Court's April 27, 2011 Order. These are procedures, limitations, and restrictions that were not in place on May 10, 2008.[1] In the Court's view, current procedures as established by these General Orders satisfy constitutional due process requirements. Consequently, Plaintiffs are not entitled to any additional prospective relief in count two because neither the Plaintiffs nor

---

1   The General Order makes a significant distinction between a "routine" inspection and an "expanded inspection for impairment."

the members of OOIDA are likely to suffer constitutional injury, given the procedures established since May 10, 2008, provided that that the MSP continues to provide proper training and follow the dictates of their own General Orders.

Unfortunately, as noted at the last hearing in this matter on July 15, 2011, there appear to be misguided attempts to give some type of elementary education in the ascertainment of fatigue.  However, that does not mean that the protocol established by the MSP since May 10, 2008, is actionable constitutionally.  The training must address the totality of the circumstances, consistent with the restrictions and limitations the General Orders require.  Lest we forget, during Plaintiff Stephen K. House's detention back on May 10, 2008, the questions he was asked included, but were not limited to, such subjects as neck size, whether he had Playboy magazines in his truck, how many times he opened his eyes at night when his wife was driving, whether he had a television and books in his sleeper berth, and the adequacy of the size of the sleeper berth.  Such inquiries have little to do with the determination of fatigue, except in rare circumstances, and rarely, if ever, will be outcome determinative of the ascertainment of fatigue.[2]

---

2    The purported training criteria set forth in a PowerPoint slide captioned "Medical Conditions," includes, but is not limited to, snoring, allergies, prescriptions, over-the-counter medications, illness, sleep apnea, CPAP machine, restless leg syndrome, acid reflux, dental pain, sleep walking, and chronic pain conditions.  In addition, a PowerPoint slide that is entitled "Sleep Distractions" has under its caption, cellphone, pets in vehicle, TV in sleeper berth, DVD player, computer, and magazines.  These inquiries contained in PowerPoint slides, even if not prohibited constitutionally, will rarely, if ever, establish a reasonable suspicion or probable cause, and will be viewed by the commercial truck driver and the public as unprofessional and misguided inquiries that properly trained troopers or CVIs simply would not make.

If the protocol established by the MSP since May 10, 2008, and the four investigative steps established by the General Order are indeed followed, the constitutional rights of commercial drivers will be honored and the highways will be a safer place for all citizens. Conversely, if state troopers or CVIs use the so-called medical condition and sleep distraction criteria in their evaluation of fatigue and other illness issues, the MSP is destined to be involved in more litigation.

Conversely, the Court respectfully rejects the Plaintiffs' assertions that the Court should require an expert witness threshold in establishing training procedures for state troopers and CVIs. Such an expert witness threshold in the field is not constitutionally required. Moreover, the Court is unaware of any such expert witness approach or threshold being utilized by any law enforcement agency in the field vis-à-vis addressing evidentiary issues at trial. The Court continues to stand by its statements made in its April 27, 2011 Order.

The Court hopes the parties choose to work together, in the context of this Order and the Court's decision, to establish a procedure that can serve as an example for the rest of the country and, in so doing, make the highways a safer place for all concerned, be it commercial truck drivers or the public. A consistent and uniform protocol would not only serve both the Plaintiffs' and the Defendants' interests, but it would serve the interest of public safety.

D.W.F.