UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Owner-Operator Independent Drivers Association, Inc., a Missouri non-profit entity; and Stephen K. House, a natural person, | Civil No. 09-1116 (DWF/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Mark Dunaski, Ken Urquhart, Christopher Norton, James Ullmer, Doug Thooft, and John Doe, Personally, Individually, and in their Official Capacities, | |
| Defendants. | |

Albert T. Goins, Sr., Esq., Goins Law Offices, Ltd.; and Daniel E. Cohen, Esq., Joyce E. Mayers, Esq., Paul D. Cullen, Jr., Esq., and Paul D. Cullen, Sr., Esq., The Cullen Law Firm, counsel for Plaintiffs.

Marsha Eldot Devine, and Thomas C. Vasaly, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendants.

Daniel J. Herber, Esq., and Sarah L. Brew, Esq., Faegre Baker Daniels LLP and Ronald M. Jacobs, Esq., Venable LLP, counsel for Non-Party Commercial Vehicle Safety Alliance.

**INTRODUCTION**

This matter is before the Court on a Motion for an Order to Show Cause (Doc. No. 250) brought by Plaintiffs Owner-Operator Independent Drivers Association, Inc. ("OOIDA") and Stephen K. House ("House") (collectively, "Plaintiffs") for

purportedly violating the Court's September 21, 2011 Final Order ("the September 2011 Order") (Doc. No. 229). For the reasons set forth below, the Court denies the motion.

**BACKGROUND**

Plaintiffs brought this action against Defendants, who are officers and officials of the Minnesota State Patrol ("MSP"), under 42 U.S.C. § 1983. In the September 2011 Order, the Court declared that: (1) during vehicle inspections, the MSP could not "expand the driver portion of the inspection to determine impairment unless they have a reasonable and articulable suspicion that the driver may be impaired"; (2) the MSP was prohibited from ordering a driver out of service "unless there is probable cause to believe that the driver, due to fatigue or illness, is unsafe to drive because there is an imminent risk to public safety"; and (3) the MSP was enjoined from rescinding or modifying the procedures established in General Order 10-25-002.[1] (Doc. No. 229 at 4-5.)

---

[1] The Court adopted the two-tiered approach to vehicle inspections contained in General Order 10-25-002, which provides in relevant part:

> V. Procedure
> (C)(2) **Reasonable articulable suspicion** is required to expand the routine commercial motor vehicle driver portion of the Level 1, Level 2, or Level 3 inspection for the purposes of determining the absence or presence of driver impairment. . . .
>
> VI. Enforcement
> (B)(1) Discretion: Before taking enforcement action for impairment due to fatigue, Troopers and CVIs [commercial vehicle inspectors] must have **probable cause** to believe the following:
> a. The driver's ability to safely operate the commercial vehicle is impaired, and
> b. The driver's impairment is caused by fatigue, and

(Footnote Continued on Next Page)

The Commercial Vehicle Safety Alliance ("CVSA") is a not-for-profit organization based in Greenbelt, Maryland, that serves motor carrier safety officials and industry representatives in the United States, Mexico, and Canada. (Doc. No. 22 at 2; Doc. No. 253, Morris Decl. ¶ 18, Ex. 6.) The CVSA's Statement of Purpose provides that the "CVSA is a leader in this important safety area by providing a framework for uniformity, compatibility, and reciprocity of inspections and motor carrier safety throughout its member jurisdictions." (Doc. No. 254, Cullen Aff. ¶ 2, Ex. B. at 1.) The CVSA's goals include "reduc[ing] fatalities, injuries, and incidents by improving safety compliance of commercial vehicle operations through uniform and reciprocal standards, practice, and enforcement throughout North America . . . [and] establish[ing] and maintain[ing] . . . enforcement practices and penalties that provide the basis for uniformity, compatibility, and reciprocity among CVSA's member jurisdictions and industry partners."[2] (*Id.*) The purpose of the CVSA's Driver-Traffic Enforcement Committee is to "[p]rovide leadership though uniformity and conformity of driver related safety issues and promote effective traffic enforcement strategies to reduce Commercial Motor Vehicle (CMV) crashes." Driver-Traffic Enforcement Committee,

---

(Footnote Continued From Previous Page)
    c. The driver's ability to safely operate the commercial vehicle is so impaired as to make continued operation of the commercial vehicle an imminent risk to public safety.

(Doc. No. 229, Ex. C at 2, 3) (emphasis added).

[2]    While the parties' post-hearing letters may be viewed as encouraging, it is difficult for the Court to understand why the CVSA did not adopt the MSP's approach set forth in the September 2011 Order. (Doc. Nos. 270, 271, 272.)

http://www.cvsa.org/committees/driver-traffic_enforcement.php (last visited Sept. 27, 2012).

The MSP and the CVSA have entered into a Memorandum of Understanding ("MOU"), which states, "Except where a member jurisdiction's laws preclude enforcement of a named item, signatories and their authorized governmental employees party to this Memorandum of Understanding agree to implement policies and procedures pursuant to the CVSA Bylaws and Operational Policies."  (Cullen Aff., Ex. B at 2.)  In August 2012, the CVSA held a four-day North American Inspectors Championship ("NAIC") in Minneapolis, Minnesota, attended by fifty North American roadside inspectors.  NAIC Recognizes Inspectors' Dedication to Commercial Vehicle Safety, http://www.cvsa.org/news/2012_press.php#aug14 (last visited Sept. 27, 2012).

MSP Captain Tim Rogotzke ("Captain Rogotzke") is Minnesota's voting representative to the CVSA.  (Doc. No. 260, Rogotzke Aff. ¶ 7; Morris Decl. ¶ 17, Ex. 5.)  OOIDA's Director of Safety and Security Operations, Douglas Morris asserted that he observed CVSA Executive Committee members possess and discuss the September 2011 Order at the CVSA's national conference in September 2011.  (Morris Decl. ¶¶ 8-10.)  No members of the MSP were part of the CVSA Driver Committee or Executive Committee, which drafted the April 1, 2012 change to the North American Uniform Out of Service Criteria ("April 1, 2012 OOS Criteria").  (*Id*. at ¶¶ 5-6, Doc. No. 260, Ex. A.)  Captain Rogotzke voted against the changes to the proposed OOS Criteria and asserts that the MSP continues to be in full compliance with the orders of this Court.  (Rogotzke Aff. ¶¶ 7-10, 14-18, 21-26, Ex. B.)

On April 1, 2012, the CVSA adopted OOS Criteria on fatigue stating, "When so fatigued that the driver of a commercial motor vehicle should not continue the trip based on reasonable, articulable suspicion. (392.3) **Declare the driver out-of-service until no longer fatigued**." (*Id*. at ¶ 3, Ex. A at 3) (emphasis in original). The OOS Criteria Policy Statement provides, "Except where state, provincial, territorial, or federal laws preclude enforcement of a named item, motor carrier enforcement personnel and their jurisdictions shall comply with these out-of-service violation standards." (*Id*. at 2.) The CVSA's policies are codified into Minnesota law at Minn. Stat. § 221.605, subd. 3, which provides: "Out-of-service criteria adopted by reference. The North American Uniform Driver, Vehicle and Hazardous Materials Out-of-Service Criteria developed and adopted by the Federal Highway Administration and the Commercial Vehicle Safety Alliance are adopted in Minnesota."

Plaintiffs contend that several times prior to the policy's adoption, the CVSA received actual notice of the Court's September 2011 Order, which requires reasonable suspicion to conduct a vehicle stop and probable cause to issue an out of service order. (Morris Decl. ¶¶ 4-10.)[3] Without first contacting the MSP to notify it of the

---

[3]   As Chief Justice Rehnquist explained in *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996):

> Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are commonsense, nontechnical conceptions that deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." . . . We have cautioned that these two legal principles are not "finely-tuned standards" comparable to the standards of proof beyond a reasonable doubt or of proof

(Footnote Continued on Next Page)

inconsistency between the CVSA's April 1, 2012 OOS Criteria, General Order 10-25-002, and the Court's September 2011 Order, Plaintiffs filed the instant motion on June 12, 2012.  On June 21, 2012, the MSP issued a memorandum to all enforcement personnel stating:

> As you know, the Court's Order dated September 21, 2011 in the OOIDA case states that a commercial motor vehicle driver cannot be ordered out of service unless "there is probable cause to believe that the driver, due to fatigue or illness, is unsafe to drive because there is an imminent risk to public safety." . . .
>
> You may have heard or seen that the CVSA's Out of Service Criteria issued on April 1, 2012 states that only "reasonable articulable suspicion" is necessary to declare a driver out of service for fatigue and/or illness.
>
> This is to remind you that it is the Court's Order dated September 21, 2011 in the OOIDA case that [the MSP] Troopers and CVIs who conduct NAST driver inspections should rely upon when impairment fatigue or illness is at issue.

(Rogotzke Aff. ¶ 3, Ex. D.)

---

(Footnote Continued From Previous Page)
> by a preponderance of the evidence.  They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed.

*Id*. (internal citations omitted).  Given the United States Supreme Court's difficulty in clearly distinguishing the concepts of reasonable suspicion and probable cause, the Court is dubious of Plaintiffs' claim that the MSP's and the CVSA's purported violation of its September 21, 2011 could rise to the level of clear and convincing evidence, which is required for an order of contempt.  *See Jake's Ltd., Inc. v. City of Coates,* 356 F.3d 896, 899-900 (8th Cir. 2004).

**DISCUSSION**

As a preliminary issue, the CVSA contends that this Court lacks personal jurisdiction over it.  Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being hailed into court there.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).  Regardless of whether a court employs a general or specific jurisdiction analysis, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties.  *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995).

The CVSA's ballot mailing to Captain Rogotzke, the undisputed existence of the MOU between the MSP and the CVSA, the direct references to the CVSA's policies in Minnesota statute, and the CVSA's four-day conference Minneapolis provide an ample

7

factual basis upon which the Court can conclude that it has specific jurisdiction over the CVSA. Moreover, the instant motion and facts underlying this action arise directly out of these knowing and voluntary contacts in Minnesota. The CVSA's assertions that the lack of an agency relationship between it and the MSP and the absence of any harm to Plaintiffs resulting from the April 1, 2012 OOS Criteria precludes specific jurisdiction are not availing. The Court has personal jurisdiction over the CVSA, which has purposefully directed activities at individuals and entities in Minnesota.

Personal jurisdiction alone, however, is not enough to render a non-party subject to the Court's injunction. Plaintiffs brought the instant motion against the CVSA pursuant to Fed. R. Civ. P. 65(d)(2), which extends the Court's injunction to parties and "other persons who are in active concert or participation with" parties to the action who receive actual notice of the Court's order. Rule 65(d)(2) prevents enjoined parties from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors." *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981) (citation omitted). Generally, injunctions do not extend to non-parties that did not receive notice and did not actively participate in a decision to violate the Court's order. *See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 364 F.3d 925, 933 (8th Cir. 2004); *cf. Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000). The Eighth Circuit has held that a person had "actual notice" when an injunction was mailed to him and he was informed of the order by telephone. *Matter of Carter*, 691 F.2d 390, 391 (8th Cir. 1982).

The MSP and the CVSA assert that Plaintiffs have failed to assert any facts demonstrating that the CVSA acted together with the MSP to violate the September 2011 Order. The CVSA further asserts that it has not been served with notice of the September 2011 Order and argues that the motion is not ripe for adjudication because Plaintiffs have not shown that they were harmed by the April 1, 2012 OOS Criteria.

Plaintiffs argue, based on Minn. Stat. § 221.605, subd. 3, that the MSP is obligated to adopt the CVSA's policies as a matter of law. They also contend that the MOU between the MSP and the CVSA constitutes acting in concert sufficient to bring the CVSA under the jurisdiction of the Court's September 2011 Order pursuant to Rule 65. The MSP and the CVSA point to the language "member jurisdiction's laws" from the MOU and "state, provincial, territorial, or federal laws" from the OOS Criteria Policy Statement in arguing that the MSP is exempt from following the April 1, 2012 OOS fatigue criteria because following the new policy would cause it to violate this Court's Order (federal law). (Cullen Aff., Ex. B at 2; Rogotzke Aff., Ex. A. at 2.)

Though the Court is satisfied that the CVSA had notice of its September 2011 Order, Plaintiffs have not met their burden to demonstrate that the MSP and the CVSA were acting in concert. Captain Rogotzke, the MSP's representative to the CVSA, voted against the April 1, 2012 OOS change. Plaintiffs have asserted no facts to demonstrate that the CVSA acted together with the MSP to violate the Court's Order. Moreover, the MSP's June 21, 2012 memorandum and September 25, 2012 letter to the CVSA's Executive Director demonstrate the MSP's continued commitment to complying with the Court's orders. Plaintiffs' assertion that Minn. Stat. § 221.605, subd. 3 prevents the MSP

9

from following the jurisdictional exemptions contained in the MOU and the CVSA OOS Criteria Policy Statement is unfounded and illogical. Nothing in the text of either exemption suggests that the orders of this Court are distinguishable from state statutory or case law. The Court sees no reason to depart from the black letter rule of interpretation that the phrase "jurisdiction's laws" refers to both state and federal statutory and case law. Plaintiffs failed to satisfy their burden under Rule 65(d) to render the CVSA subject to this Court's September 2011 Order, and the Court finds no basis upon which to hold the MSP in contempt.

## CONCLUSION

It is difficult for the Court to understand why the CVSA, the central mission of which is to achieve uniform national safety standards, rejected OOIDA's proposal in September 2011 to adopt fatigue standards congruent with those litigated by the MSP. The CVSA Executive Committee's decision to delete the reasonable suspicion standard from the April 1, 2012 OOS Criteria is, in the Court's view, a step backward because it eliminates the specificity in fatigue standards necessary to prevent potential constitutional violations. The decision of the CVSA is destined to create more litigation while discouraging uniform national safety standards.

The Court continues to believe that a global resolution and settlement of these issues by bringing all parties, including officials from the Federal Motor Carrier Safety Administration, to the table will not only serve the best interests of all parties, but will promote uniform national safety standards, and, in so doing, will serve the public interest. For that reason, the Court encourages the parties to engage in a constructive dialogue.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for an Order to Show Cause (Doc. No. [250]) is **DENIED.**

Dated: October 15, 2012        s/Donovan W. Frank
                               DONOVAN W. FRANK
                               United States District Judge